IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

**JOHN DOE,**

    **Plaintiff,**

v.

**TENNESSEE BOARD OF LAW EXAMINERS, TENNESSEE SUPREME COURT,**

    **Defendants.**

Civil Action No._____

JURY DEMANDED

## COMPLAINT

Plaintiff, John Doe ("Doe"), files this Complaint against the Tennessee Board of Law Examiners ("TBLE") and the Tennessee Supreme Court ("TSC") (collectively, the "Defendants") and alleges as follows:

### I. NATURE OF THE ACTION

1. This is an action under Title II of the Americans with Disabilities Act ("ADA").

2. This Action seeks relief for Doe, who was discriminated against by Defendants in his application to the Tennessee Bar because of his disability diagnosis.

3. Doe is proceeding under a pseudonym to protect his character and fitness results from public disclosure and because of his reasonable fear of harm and retaliation in relation to obtaining his law license in Tennessee.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1334 because this action is authorized and instituted pursuant to Title II of the ADA, 42 U.S.C. §§ 12101, *et seq.,* and its accompanying regulation, 28 C.F.R Sect. 35.130.

5. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Doe, a resident of Knox County, Tennessee, and Defendants, who regulate candidate admission to the practice of law throughout the State of Tennessee.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and/or omissions giving rise to Doe's action occurred and are occurring within the Eastern District of Tennessee, Knoxville Division.

## III. PARTIES

6. Doe is a natural person and citizen of the State of Tennessee where he currently resides. Doe is a "qualified individual with a disability," pursuant to 42 USCS § 12131(2), but is otherwise *sui juris* and has the ability to sue on his own behalf.

7. Defendant TBLE was created as part of the judicial branch of government by the Tennessee Supreme Court ("TSC") to oversee all bar admissions qualifications, procedures, and related issues. It is a "public entity" pursuant to 42 U.S.C. § 12131(1)(B). *See* Tenn. Code Ann. § 23-1-101.

8. Defendant TSC has exclusive jurisdiction to regulate the admissions of persons to the practice of law in the State of Tennessee and has general supervisory authority over the

actions of the TBLE. It is a "public entity" pursuant to 42 U.S.C. § 12131(1)(B). *See* Tenn. Code Ann. § 23-1-101.

## IV. FACTUAL BACKGROUND

9. Prior to entering law school, Doe received an M.B.A. from the University of Tennessee and an M.D. from Poznan University of Medical Science in Poland. He had a prominent career in healthcare administration and was employed as the Executive Director of Hospital Operations at the prestigious St. Luke's Roosevelt Hospital Center in New York ("St. Luke's").

10. On or about 2009, while working at St. Luke's, Doe was diagnosed with Relapsing Remitting Multiple Sclerosis ("RRMS") by Dr. Saud Sadiq, the founder and Director of the International Multiple Sclerosis Management Practice ("IMSMP") and the Director and Chief Research Scientist of the Tisch MS Research Center of New York ("Tisch".) Notably, IMSMP and Tisch constitute the largest Multiple Sclerosis Center in the world.

11. Doe's RRMS is characterized by attacks or "relapses" of neurological symptoms followed by periods of partial or complete recovery or "remissions." The National Multiple Sclerosis Society explains RRMS in the following way:

> [RRMS] is characterized by clearly defined attacks of new or increasing neurologic symptoms. These attacks – also called relapses or exacerbations – are followed by periods of partial or complete recovery (remissions). During remissions, all symptoms may disappear, or some symptoms may continue and become permanent. . . . RRMS can be further characterized as either active (with relapses and/or evidence of new MRI activity over a specified period of time) or not active, as well as worsening (a confirmed increase in disability following a relapse) or not worsening.[1]

12. As the name RRMS itself indicates, the disease ebbs and flows. Periods of relapse are debilitating and can be brought on by acute events of stress. In Doe's case, he experienced two significant periods of relapse; the first in 2009 during the time of his initial diagnosis, and the second in 2012, following his wrongful termination from the Cookeville Regional Medical Center in Tennessee ("CRMC") which coincided with the initiation of divorce from his wife.

13. Generally, during periods of RRMS relapse, physical symptoms such as visual, weakness, fatigue, trouble with balance, and lack of coordination, can be present. Periods of relapse may also affect cognitive functions, including difficulty thinking clearly, memory or recall, attention and concentration, speed of information processing, problem-solving, and visual-spatial abilities.

14. During Doe's second relapse, which persisted for more than a year, his physical symptoms included headaches, numbness, tingling, issues with balance, and some cognitive impairment. A neuropsychological analysis performed in late 2013 by Joanne Festa, PhD, at the IMSMP notes that Doe's speech was markedly slower than in previous evaluations, and that his rankings on the intelligence scale, perceptual reasoning, processing speed, and working memory indicators reflected a decline from prior abilities.

15. As a result, Doe filed for total disability benefits in the Spring 2014 due to his inability to function in his career as a hospital CEO. At this point, both he and his doctors believed he would not go back into remission, as approximately 85% of individuals with multiple sclerosis are initially diagnosed with RRMS.

16. Doe was initially denied disability benefits and filed suit against Sun Life Insurance ("Sun Life") and CRMC, his former employer. Doe's attorney during this process testified by

sworn declaration that the severity of Doe's symptoms varied, and that he was intelligent but limited by RRMS. The suit was aggressively litigated, and Doe's counsel, John Dupree, expected to succeed in obtaining long-term benefits.

17. For purposes of his lawsuit, Doe obtained an updated report from a neuropsychologist at the IMSMP which stated in relevant part: "The results demonstrate declines in memory, processing speed, attention, and concentration reported by [Doe]."

18. From about late 2016 to early 2017, Doe's condition unexpectedly began to improve, and he entered into an extended period of remission from RRMS. During that time, Doe made the decision to discontinue the suit to obtain disability benefits and apply to law school.

19. After conversations with former Tennessee Supreme Court Justice Gary Wade ("Justice Wade"), then Dean of Lincoln Memorial University Duncan School of Law ("LMU Law"), Doe took the LSAT exam, applied to LMU Law, and was accepted.

20. During his time at LMU Law, Doe was given necessary accommodations for his RRMS, which allowed him successfully to complete his education and graduate.

21. In December 2019, Doe graduated from LMU. He then passed the bar exam with a score that would permit him to practice in all states that accept the Universal Bar Exam.

22. In or about 2020, Doe applied for admission to the Tennessee bar.

23. The Bar Application for Tennessee has sections including: Personal Information; Applications, Authorization, and Conduct; Education; Residences; Employment; Character and Fitness; Legal Proceedings; Financial Responsibility; and Character References. Notably, the Tennessee bar application does not request information about an applicant's medical history. Doe did not submit information regarding his RRMS diagnosis.

24. One component of the Tennessee bar application is the Character and Fitness Exam. The Tennessee Character and Fitness Standard states: "An applicant shall not be admitted if the Board finds reasonable doubt as to that applicant's reputation, character, honesty, respect for the rights of others, fitness to practice law, and adherence to and obedience to the Constitution and laws of Tennessee and the United States and concludes that such applicant is not likely to adhere to the duties and standards of conduct imposed on attorneys in this State." Tenn. Sup. Ct. R. 7, §6.01.

25. The Tennessee Character and Fitness Exam consists of an interview that is typically conducted by one attorney and is a brief, cursory event.

26. Doe did not disclose any information regarding his RRMS diagnosis prior to his Tennessee Character and Fitness Exam.

27. On May 8, 2020, Doe submitted to his Tennessee Character and Fitness Exam. Unusually, his interview was conducted by *two* attorneys, Steven L. Hurdle ("Hurdle") and Martelia T. Crawford ("Crawford"). It lasted for approximately two hours and was recorded.

28. It was immediately clear to Doe from the interview that Crawford and Hurdle had received information regarding his RRMS diagnosis from one or more outside sources, including Doe's ex-wife. Notably, Crawford practices in Cookeville, Tennessee and had likely heard of Doe through the disability lawsuit he filed upon wrongful termination from the CRMC, as it had been prominently featured in the local news.

29. During the two-hour interview, Crawford and Hurdle spent approximately an hour interrogating Doe in detail about his medication history, the severity of his RRMS diagnosis, current prognosis, specific symptoms, treating physician, past diagnostic tests,

the timing and appearance of his symptoms, whether he would cognitively be able to practice law, the history of his RRMS progression, and more.

30. For example, early in the interview, Crawford challenged Doe about his RRMS diagnosis and his ability to handle the workload of an attorney given that diagnosis.

31. Crawford and Hurdle also reviewed and challenged the timeline of Doe's RRMS diagnosis and periods of relapses.

32. Doe grew increasingly uncomfortable with the tenor of the interview and the pointed focus on his mental health and RRMS disability. He began to record the interview himself.

33. At one point, Crawford, who is not a doctor but played one for purposes of the interview, asked if one of Doe's medications was for severe MS. When Doe responded that it was not, Crawford challenged him, saying, "So if that's what the Mayo Clinic says, they're wrong?"

34. After the interview, Crawford and Hurdle submitted a three-page, single-spaced report ("Report") questioning whether Doe had the character and fitness to practice law in Tennessee. See **Exhibit A,** Report.

35. In the Report, in response to the form question: "Evidence of mental or psychological disorder *from information disclosed in the application* that in any way affects or, if untreated, could affect the Applicant's ability to practice law in a competent and professional manner," (emphasis in original), the interviewers responded, "Yes."

36. The Report, in pertinent part, cited Doe's RRMS diagnosis and his testimony and interrogatory responses in his Sun Life lawsuit that he was permanently disabled as reason to question his honesty and credibility, stating: "Having sworn that because of cognitive

dysfunction he is permanently and totally disabled from all employment, it is now difficult for us to conclude that he is capable of practicing law."

37. In the Report, Crawford and Hurdle also questioned the validity of Doe's RRMS diagnosis, ignoring and/or misconstruing the nature of RRMS relapses and remissions, relying instead on information they received from his Doe's ex-wife as opposed to Doe's expert medical providers.[2]

38. In the Report, Crawford and Hurdle, who are lawyers and not doctors, evaluated Doe's medical prescriptions and the severity of his illness based on informally gathered information.

39. Ultimately, the Report improperly and unjustifiably concluded that Doe did not "possess the high standards of character, fitness, or moral qualifications required for admission to the practice of law."

40. On May 10, 2020, shortly after the interview, Doe wrote a letter to the TBLE expressing his concern about the interview. As part of the letter, Justice Wade of LMU Law offered to serve as reference for Doe in support of his character and fitness and his belief that Doe's disability would not impact his ability to practice law. **Exhibit B**, Doe Letter.

41. The TBLE never responded to the Doe Letter.

---

[2] Plaintiff's relationship with his ex-wife is of limited relevance to this suit; however, it is important to point out that their relationship leading up to Plaintiff's attendance in law school and bar application process became increasingly volatile when his ex-wife became involved with one of Plaintiff's law school classmates who has a reputation for manipulation, abuse, and drug use. The TBLE stated that evidence of Plaintiff's behavior during his contentious divorce that was submitted by his ex-wife was mitigated by the fact that they came in the context of divorce and child-custody matters in which provocation came from both sides, and by the testimony of his child-custody lawyer and a court-appointed psychologist.

42. On August 7, 2020, the TBLE filed a Show Cause Order, pointing to Doe's "sworn deposition testimony . . . that he is disabled from working due to 'cognitive dysfunction and physical ability.'" **Exhibit C**, Show Cause Order.

43. Despite having no history or evidence of substance abuse, the Show Cause Order required Doe to acquire a fitness-for-duty evaluation from the Tennessee Lawyers Assistance Program ("TLAP"), which is intended to provide consultation, referral, intervention, and crisis counseling for lawyers, judges, bar applicants and law students who are struggling with substance abuse, stress or emotional health issues.

44. TLAP does not have the ability to perform such an evaluation, so required that Doe attend a "multi-day, multidisciplinary professional evaluation to provide clarity on your current diagnostic picture and recommendations for treatment." Doe complied.

45. Doe's evaluation required him to travel out-of-state to the Positive Sobriety Institute at the height of the COVID-19 pandemic, as failure to comply would have amounted to an automatic denial of Doe's application.

46. Significantly, the Multidisciplinary Comprehensive Assessment ("MCAP") Report stated that Doe's "[c]ognitive ability [was] grossly intact," and concluded that he "should not be restricted from practicing law." It did, however, require that Doe receive oversight and psychological support to practice law professionally and effectively. **Exhibit D**, MCAP Report.

47. The MCAP Report also recommended that Doe "establish neurological care at an MS center locally," engage in weekly therapy for eighteen (18) months, and be monitored by TLAP for two (2) years. It made other recommendations that are unrelated to Doe's ability to practice law.

48. TLAP's conclusions and report to TBLE relied solely on the recommendations of the MCAP regarding its conclusions about Doe.

49. On December 30, 2020, Doe responded to the Show Cause Order, attaching the MCAP Report, which concluded that Doe "should not be restricted from practicing law." **Exhibit E**, Show Cause Order Response.

50. Regarding Doe's medical fitness to practice law, Doe's Show Cause Order Response addressed the TBLE's concerns by attaching copies of a medical evaluation and a statement by Doe's MS physician in the Sun Life lawsuit, corroborating his symptoms and prognosis. The Response also explained Doe's progression from RRMS relapse to remission and the lessening of his symptoms in 2015, the subsequent settlement of his disability lawsuit, and his application to law school. The disabling relapse and subsequent recovery and period of remission was also corroborated by an Affidavit from John Dupree, a member of the Tennessee bar who worked with Doe on his disability case.

51. On January 26-27, 2021, the TBLE conducted a hearing via Zoom, at which Justice Wade testified that Doe enjoyed a great reputation in school, was not physically impaired by his condition, and is fully capable of practicing law in Tennessee. Several others testified on behalf of Doe, including: Allison Easterday, Doe's divorce lawyer and a member of the Tennessee Bar; Lance Laurence, who conducted a court-ordered psychological evaluation of Doe for his divorce proceedings; and Brian Lipari, Doe's long-time friend and a physician.

52. Doe filed a Post Hearing Brief and a Supplemental Post Hearing Brief on February 11, 2021, and March 1, 2021, respectively. **Exhibit F** and **Exhibit G**.

53. On March 29, 2021, the TBLE filed an Order Resolving Show Cause Order, stating that "the Board does not conclude that [Doe] is medically unfit to practice law," but rejected his application to the Tennessee bar, citing Doe's lack of credibility based on his representations in the Sun Life disability lawsuit that he was permanently disabled. The TBLE prohibited him from re-applying to the Bar of Tennessee for three (3) years. **Exhibit H**.

54. On May 29, 2021, Doe appealed the decision, filing a Petition for Relief and Rehearing to the TBLE, the same individuals who initially denied him, in accordance with Rule 7 of the Tennessee Supreme Court.

55. On June 10, 2021, the TBLE denied Doe's Petition for Relief and Rehearing.

56. On July 16, 2021, Doe filed a Petition for Writ of Certiorari to the Tennessee Supreme Court.

57. On October 11, 2021, the Tennessee Supreme Court denied Doe's Petition for Writ of Certiorari.

58. As a result of: (a) Tennessee Bar bureaucracy, (b) the unnecessary and improper interrogation of Doe about his RRMS diagnosis and cognitive abilities in violation of the ADA, (c) holding the ebbing and flowing nature of Doe's RRMS disease against him and construing it as a credibility issue, and (d) improperly crediting unreliable sources while ignoring expert medical sources, Defendants prevented Doe from practicing law in Tennessee, causing him substantial loss of income, loss of earnings potential, and loss of enjoyment of life, among other damages.

## V. CAUSES OF ACTION

### COUNT ONE

### VIOLATION OF THE AMERICANS WITH DISABILITY ACT

73. Doe realleges and incorporates paragraphs 1-58, as if fully set forth herein.

74. Defendants are "public entities" pursuant to Title II of the ADA as defined by 42 U.S.C. § 12131(1).

75. Doe has an RRMS diagnosis and is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2).

76. Defendants violated Title II of the ADA by denying his admission to the Tennessee Bar based solely on his disability and a misunderstanding of the nature of his illness.

77. Defendants violated Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations by discriminating against Doe in its administration of its licensing and bar admission system based solely on his disability and a misunderstanding of the nature of his illness.

78. Defendants acted with discriminatory intent and with deliberate indifference to Doe's federally protected rights.

79. Defendants engaged in this conduct with malice or reckless disregard for Doe's federally protected rights.

80. Doe has suffered injury due to the actions and inactions of Defendants and is entitled to declaratory relief and compensatory and punitive damages and is entitled to recover those attorney fees, expert fees, costs, and expenses incurred in this case from the Defendants pursuant to 42 U.S.C. § 12101 et seq.

## COUNT TWO:

## VIOLATION OF EQUAL PROTECTION UNDER CONSTITUTIONAL AMENDMENT XIV

81. Doe hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if re-alleged fully herein.

82. Doe challenges the vagueness and unfair application of Defendants' licensing and bar admission process both facially and as applied to him.

83. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

84. Under the Equal Protection Clause, discrimination based on disability is presumptively unconstitutional and subject to heightened scrutiny.

85. The vagueness and unfair application of Defendants' licensing and bar admission system discriminates against individuals with disabilities like Doe.

86. The vagueness and unfair application of Defendants' licensing and bar admission system and its discrimination against individuals with physical disabilities like Doe is not substantially related to any important government interest.

87. The vagueness and unfair application of Defendants' licensing and bar admission system denies individuals with physical disabilities, like Doe, equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment.

88. The vague, unfair, and discriminatory nature of the licensing and bar admission system with respect to individuals with a disability like Doe is intentional or indicates a reckless or callous disregard for his rights.

89. As a result of Defendants' vague, unfair, and discriminatory licensing and bar admission system, Doe has suffered injury and is entitled to compensatory and punitive damages as well as reasonable costs, including attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT THREE

## VIOLATION OF TENNESSEE CODE ANNOTATED § 8-50-103

90. Doe hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if re-alleged fully herein.

91. Defendants are a component of the State of Tennessee and constitute an employer under the meaning in the Tennessee Disability Act.

92. Doe's RRMS diagnosis constitutes a disability under the Tennessee Disability Act.

93. Doe's disability would not prevent him from the effective practice of law or otherwise impair the performance of the work involved.

94. Defendants' licensing and bar admission system is vague, unfair, and discrimates against individuals with disabilities.

95. Defendants' discriminatory actions against Doe based on his status as an individual with a disability were intentional or committed with reckless or callous disregard for his rights.

96. As a result of Defendants' vague, unfair, and discriminatory licensing and bar admission system, Doe has suffered injury and is entitled to compensatory and punitive damages as well as reasonable costs.

VI. **PRAYER FOR RELIEF**

WHEREFORE, Doe requests this Court grant the following relief:

97. Entry of judgment in favor of Doe, determining that Doe was improperly denied admission to the Tennessee Bar, together with an award of compensatory damages;

98. An award of attorney fees, costs, and expenses incurred in prosecuting this action;

99. Punitive damages;

100. Injunctive relief requiring Defendants to remove show cause orders and medical information and records from Doe's file;

101. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

102. Trial by jury on all triable issues; and

103. All other relief to which he may be entitled.

Respectfully Submitted,

/s/ Gregory Brown
Gregory Brown        BPR #027944
G. Alan Rawls        BPR #038300
Colleen Conboy       BPR #038711
LOWE YEAGER & BROWN PLLC
Riverview Tower, Suite 2102
900 S. Gay Street
Knoxville, Tennessee 37902
Phone:(865) 521-6527
Fax:(865) 637-0540
gb@lyblaw.net
gar@lyblaw.net
ctgc@lyblaw.net
**Counsel for Doe**