## TN Board of Law Examiners
## INTERVIEWER'S REPORT

Name of Interviwer

Steven L. Hurdle & Martelia T. Crawford

Applicant's Name

Menachem Langer

Date of Interview

05/08/2020

By submitting this Report in Synergy, I certify that I have reviewed the Applicant's Character Questionnaire and application documentation, the NCBE background investigation, if was completed and included with the file, the Law Degree Verification Form and all related items, and inquired of the Applicant as to whether any answer on the Application should be changed or supplemented because of events occurring after the date on which it was signed. Additional pages may be attached for explanations.

Any changes?

○ No

⦿ Yes

**If yes**: Advise Applicant to amend the application according to the instructions available on the website, www.tnble.org

**Please indicate whether the Applicant's interview and record of conduct reveal any of the factors listed below. For any "yes" answer, describe the issues revealed and explain how they affect your recommendation to approve or not approve the Applicant's character and fitness, attaching extra pages if necessary:**

1. Charged with, Commission of or Conviction of crime, including a felony, even if expunged, deferred, dismissed

⦿ No

○ Yes

**If yes,** indicate type of crime(s):

**For Felony Conviction:**

a. Have more than 5 years passed since the applicant was released from parole, probation, community control, post-release control, or prison if no post-release control or parole was mandated?

○ No

○ Yes

Please explain answer to a:

b. Have the rights and privileges of applicant that were forfeited by conviction been restored by operation of law, expungement, or pardon?

○ No

○ Yes

Please explain answer to b:

c. Is the applicant disqualified by law from holding an office of public trust i.e., crime of moral turpitude?

○ No

○ Yes

---

2. Commission of an act constituting the unauthorized practice of law

○ No

◉ Yes

If yes, please explain:

> Possibly.  See attached.

3. History of drug - or alcohol - related issues, including history of poor choices, arrests, discipline or anectodotal evidence

◉ No

○ Yes

If yes, please explain:

4. Violation of the honor code/academic integrity code during law school or any other academic misconduct

◉ No

○ Yes

If yes, please explain:

5. Evidence of mental or psychological disorder *from information disclosed in the application* that in any way affects or,if untreated, could affect the Applicant's ability to practice law in a competent and professional manner

○ No

◉ Yes

If yes, please explain:

> Possibly.  See attached.

6. A pattern of disregard of the laws of this state, another state, or the United States; such as an excessive number of moving violations

( ) No
( ) Yes

If yes, please explain:

[blank text box]

7. Failure to provide complete and accurate information concerning the applicant's past, false statements, failure to cooperate with the investigation by failing or refusing to provide information necessary to evaluate the applicant

( ) No
(●) Yes

If yes, please explain:

Possibly. See attached.

8. Evidence of any of the following (check the box to indicate "yes":

[✓] a. Acts involving dishonesty, fraud, deceit or misrepresentation
[✓] b. Abuse of legal process
[ ] c. Neglect of financial responsibilities
[ ] d. Default on federally-insured student loans (not deferred)
[ ] e. Neglect of professional obligations
[ ] f. Violation of an order of a court
[ ] g. Denial of admission to the bar in another state due to character/fitness issues

If yes to 8 a - g, please explain:

[blank text box]

9. Disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction

(●) No
( ) Yes

If yes, please explain:

[blank text box]

For the following selections, please note anything in the Applicant's record or from your interview with the Applicant that suggests that the applicant is unable to satisfy the character and fitness requirements for the practice of law. Explain each "yes" that you check. Include a description of the Applicant's conduct or refer to your answer in Items 1 - 9, above, that raises a concern, and explain how the conduct affects your recommendation to approve or not approve the Applicant's character and fitness.

**Concern regarding Applicant's:**(Answer No if not a concern; Yes if concern and explain)

A. Ability to communicate clearly with clients, attorneys, courts and others

◉ No

○ Yes

If yes, please explain:

B. Ability to exercise good judgment in conducting one's professional business or personal affairs

○ No

◉ Yes

If yes, please explain:

See attached.

C. Ability to conduct oneself with a high degree of professionalism, honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations

○ No

◉ Yes

If yes, please explain:

Possibly.  See attached.

D. Ability to conduct oneself with respect for and in accordance with the law and the Tennessee Rules of Professional Conduct and in a manner that engenders respect for the law and the profession

○ No

◉ Yes

If yes, please explain:

See attached.

**Concern regarding Applicant's:** (Answer No if not a concern; Yes if concern and explain)

E. Ability to conduct oneself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others

⦿ No

◯ Yes

If yes, please explain:

F. Ability to avoid acts that exhibit disregard for the health, safety, and welfare of others

◯ No

⦿ Yes

If yes, please explain:

Possibly. See attached.

G. Ability to use honesty and good judgment in financial dealings on behalf of oneself, clients, and others

◯ No

⦿ Yes

If yes, please explain:

Possibly. See attached.

H. Ability to comply with deadlines and time constraints

⦿ No

◯ Yes

If yes, please explain:

**SUMMARY**: In your opinion, does this applicant possess the high standards of character, the fitness, and the moral qualifications required for admission to the practice of law?

◉ No

○ Yes

If NO, please explain:

See attached.

**RECOMMENDATION**: Based on the foregoing, I make the following recommendation of this applicant for admission to the Bar of Tennessee:

○ Recommend

○ Recommend with Reservations (MUST include comments regarding this recommendation)

◉ Do Not Recommend (MUST include comments regarding this recommendation)

Additional Comments (may use additional pages as needed):

See attached.

Please save this form as "Interviewer Report [date]" and upload in Synergy under RELATED ITEMS/C&F (DIC Recommendation Letter).

# Interview Report

Re:     Menachem Langer
        Date of interview 5/8/2020

Steven L. Hurdle of the District 2 Investigating Committee and Martelia T. Crawford of the District 4 Investigating Committee interviewed Menachem Langer on May 8, 2020 via Zoom video conference.  Langer briefly reviewed his family background and education, which includes a B.S. from the University of the Incarnate Word, an M.D. from Poznan University Medical Science, an MBA from the University of Tennessee, and a J.D. from the Duncan School of Law at Lincoln Memorial University.

Langer says that while in medical school he decided he did not want to be a physician like his father.  He made no mention of the fact that, according to Dr. Kristen Carver, Langer's ex-wife, he failed his medical boards three times.

Langer moved to Cookeville in 2010, having obtained employment as first the chief operating officer, then chief executive officer of Cookeville Regional Medical Center.  The hospital terminated Langer in 2012 after a disagreement over a substantial raise in his salary he negotiated with the chairman of the board of trustees of the hospital, who has been described as exhibiting signs of senility at the time.  Langer reached an agreement with the hospital to continue as a consultant for three years at a reduced salary.

While serving in his role as a consultant with CRMC, Langer describes having done law-related work and farming out some of that work to Jeremy Clark, a lawyer in Franklin, because Langer wanted to avoid practicing law without a license.

In 2015, Langer filed a lawsuit in Knox County against Sun Life Assurance Company of Canada and Cookeville Regional Medical Center, alleging that Sun Life improperly denied his claim for disability benefits relating to his diagnosis of multiple sclerosis.  Langer alleged that if there was no coverage under the Sun Life policy, CRMC was liable because it was required to provide him a disability policy as a part of his employment agreement with the hospital.  In 2014, Langer had applied for benefits under the Sun Life policy based on his "multiple sclerosis—resulting in cognitive dysfunction—memory, processing, concentration . . . ."  Langer supported his application with a statement from his treating physician that says his decision-making abilities are severely impaired and that he is unable to work due to cognitive dysfunction.

In sworn answers to interrogatories in his lawsuit against Sun Life and CRMC, Langer stated that he was permanently and totally disabled from all employment.  Langer now explains that his condition improved beginning in about 2015 and that as a result, after significant discovery, he settled the lawsuit, presumably on a somewhat nominal basis.  Langer says that he felt the last effects from this flare-up of his MS in 2016, when those symptoms started to resolve.  He describes his MS as the remitting/relapsing type, not the progressive type.  His ex-wife Kristen Carver, a licensed radiologist, describes Langer's MS as progressive.  Among the medications Langer has

taken for his MS is Tysabri, which he has taken since 2013. If the Mayo Clinic states that Tysabri is indicated for severe MS, Langer disagrees.

Mr. Langer and Dr. Carver were divorced in 2012, and they have two minor children. To put it mildly, the divorce and subsequent issues relating to custody and child support have been contentious. Dr. Carver submitted voluminous material in connection with Langer's bar application as did an anonymous person Langer believes to be Daniel Crowe, a law school classmate who is now dating Dr. Carver. That material is replete with examples of profane, combative, and sometimes threatening texts and e-mails from Langer to Dr. Carver and Mr. Crowe. Carver and the anonymous person also supplied numerous audio recordings of Langer talking to Crowe and to Langer's children. In one of those recordings, which was apparently made by Langer's daughter without his knowledge, Langer can be heard shouting at the child. Langer denies that he has ever abused his children.

Both Langer and Dr. Carver have filed numerous orders of protection, a process that has continued over several years. During our interview with Langer, he surmised from our questions that Daniel Crowe had submitted information to the Board. Within hours after the interview concluded, Langer sent the attached e-mail and motion for show cause in which he moves the court *pro se* for an order directing Crowe to show cause why he should not be held in criminal or civil contempt for violating an ex parte order of protection allegedly procured by Langer on February 11, 2020. In that motion, Langer asserts that "It was apparent from the line of questioning and the examiners disclosure that they were sent material by Mr. Crowe." Although the motion is unsigned, it is dated May 8, 2020, the date of Langer's interview, and in his accompanying e-mail, Langer says that the motion was filed on May 8. The motion mentions the fact that the interview, which was conducted remotely via Zoom, was recorded, and Langer assumes that he will be able to submit that recording in support of his motion for order to show cause.

Contrary to Langer's assertion, little if any of the questioning in the interview was based on material supplied by Crowe; instead, most of the questioning related to material supplied by Dr. Carver.

On January 30, 2020, the Board of Law Examiners approved Langer's registration application for supervised practice, designating Jeremy Clark as Langer's supervising attorney. According to Langer's LinkedIn page, Langer has been a partner in the Langer Law Group since April 2020. There is no mention on that page of Langer's supervised practice status or of Jeremy Clark. The "About" section of the LinkedIn page includes this statement: "I am now focusing on using my unique background to zealously represent my legal clients."

It appears that Langer is currently holding himself out as a practicing lawyer, without any caveat relating to his supervised practice. Langer's willingness to attempt to use the bar application process as a means to obtain an advantage in his ongoing custody litigation is troubling.

We have a number of concerns about admitting Menachem Langer to the bar. Although Langer is clearly very intelligent and well-spoken, he consistently blames others for his own shortcomings. He takes no responsibility for any of the totally inappropriate content of the litigation relating to his divorce and custody issues—Langer says all of the problems in that area have been caused by

his ex-wife and his former friend Daniel Crowe. While it is clear that Mr. Crowe has also engaged in unsavory and inappropriate conduct, the same can certainly be said of Langer.

In connection with the custody litigation relating to Langer's and Carver's children, Dr. Diana McCoy, a psychologist designated by the court, evaluated Langer and Carver. She concluded that Langer suffers from unspecified personality disorder (turbulent type), histrionic personality style, and narcissistic personality style. She commented that Langer has a sense of superiority and that, "as stress mounts, he may become increasingly unwilling to examine his own contribution to his problems . . . ."

Over the past ten years, and continuing even to this month, Langer has failed to provided complete and accurate information concerning his past and has made misleading—if not false—statements about his personal history. The events related to Langer's termination at Cookeville Regional Medical Center legitimately bring into question his honesty and forthrightness and suggest at least the possibility of his attempting to manipulate someone with diminished mental capacity.

Langer's disability claim and subsequent lawsuit cause us to question his honesty either in the disability application and lawsuit or his bar application. Having sworn that because of cognitive dysfunction he is permanently and totally disabled from all employment, it is now difficult for us to conclude that he is capable of practicing law.

The extensive, scurrilous, and continuing pattern of Langer's conduct relating to his divorce and related litigation raises substantial questions about Langer's character, ability to exercise good judgment in conducting his personal affairs, and his ability to conduct himself with a high degree of professionalism, honesty, integrity, and trustworthiness. Langer's conduct leads us to question his ability to avoid acts that show disregard for the health, safety, and welfare of others.

We believe Menachem Langer does not possess the high standards of character, fitness, or moral qualifications required for admission to the practice of law. We do not recommend that he be admitted to the bar of the State of Tennessee.